FILED U.S. DISTRICT COURT DISTRICT OF KANSAS
'09 OCT 22 PM 12:11
CLERK, U.S. DISTRICT COURT BY DEPUTY CLERK AT WICHITA, KS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Juanita D. Blackmon
1541 N. Floberta
Wichita, Kansas 67208
(Enter above the full name of Plaintiff(s))

vs.

USD 259-Wichita Public School District
Name Supt. John Allison, Robert Garner-Prin
HR- Liz Frazier, KEN JANTZ-Principal
201 N. WATER WICHITA, KS 67203
Street and number
Wichita Kansas 67208
City State Zip Code

(Enter above the full name and address of Defendant in this action - list the name and address of any additional Defendants on the back side of this sheet.)

Case Number: 09-CV-2546-EFM-KMH
(To be assigned by Clerk)

**EMPLOYMENT DISCRIMINATION COMPLAINT**

1. This employment discrimination lawsuit is based on (check only those that apply):

✓ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*., for employment discrimination on the basis of race, color, religion, gender, or national origin.
**NOTE**: *In order to bring suit in federal district court under Title VII, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

✓ Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq*., for employment discrimination on the basis of age (age 40 or older).
**NOTE**: *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

✓ American with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq*.,

for employment discrimination on the basis of disability.

✓ **NOTE**: *In order to bring suit in federal district court under the American with Disabilities Act, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

____ Other (Describe) Hostile Environment Pregnancy Discrimination Act - Caregiver - Responsibilities Privacy Violation Act / Conspiracy to Offend - Intentional Emotional Distress 14th amendment Due Process Violation - intent to defraud EEOC, falsifying documents series of retalitory conduct

2. If you are claiming that the discriminatory conduct occurred at a different location than the address provided for Defendant, please provide the following information:

_______________________________________________

(Street Address) (City/County) (State) (Zip Code)

3. When did the discrimination occur? Please give the date or time period: 1998 — 2009 Pattern & Practice

## ADMINISTRATIVE PROCEDURES

4. Did you file a charge of discrimination against Defendant(s) with the Kansas State Division of Human Rights or the Kansas State Commission on Human Rights?

__✓__ Yes Date filed: 2006 - 2008

_____ No

5. Did you file a charge of discrimination against Defendant(s) with the Equal Employment Opportunity Commission or other federal agency?

__✓__ Yes Date filed: 2006 - 2008

__✓__ No

6. Have you received a Notice of Right-to-Sue Letter?

__✓__ Yes _____ No

If yes, please attach a copy of the letter to this complaint.

7. If you are claiming ***age discrimination***, check one of the following:

__✓__ 60 days or more have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.

_____ fewer than 60 days have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.

## NATURE OF THE CASE

8. The conduct complained of in this lawsuit involves (check only those that apply):

- ____ failure to hire me
- ✓ termination of my employment
- ✓ failure to promote me
- ✓ failure to accommodate my disability
- ✓ terms and conditions of my employment differ from those of similar employees
- ✓ retaliation
- ✓ harassment
- ✓ reduction in wages
- ____ other conduct (specify):

Listed in complaint - Privacy Violations
Conspiracy to offend

Deprivation of Rights

Did you complain about this same conduct in your charge of discrimination?
✓ Yes ____ No

9. I believe that I was discriminated against because of (check all that apply):

- ✓ my race or color, which is African American
- ____ my religion, which is Non denomination
- ____ my national origin, which is ____
- ____ my gender, which is ____ male; ✓ female
- ____ my disability or perceived disability, which is Pregnancy- Post Partum Depression, Post Traumatic Stress Disorder
- ____ my age (my birth date is: Nov 02, 1966)
- ____ other: My son age (7) has a bona fide disability - caregiver responsibility

Did you state the same reason(s) in your charge of discrimination?
✓ Yes ____ No

10. State here, as briefly and clearly as possible, the essential facts of your claim. Describe specifically the conduct that you believe is discriminatory and describe how each defendant is involved in the conduct. Take time to organize your statement; you may use numbered paragraphs if you find it helpful. It is not necessary to make legal arguments, or to cite cases or statutes. (SEE 12 page complaint)

In 2001, Plaintiff observed inappropriate conduct among (2) male staff member Plaintiff was (8) month Pregnant, defendant sought to intimidate plaintiff along with retaliation, as he got to the new principal Ken Jantz, I returned from maternity leave with transfer papers, and all of my personal belongings boxed up, family photo was missing, rather than address the inherent flaws of the administration, The focus of the retailation fell upon Plaintiff The retaliation was dormant until my daughter was attacked at school hospitalized in 2005- In an effort to problem solve w/ Administrators at East High School-defendants were emboldened with their privelege, Rather than resolve matters, they emphatically submitting to a hostity and harrassement campaign including many agents, co workers intentionally creating environments of Hostile Work environments for me @ work & my daughter at school.

FMLA

2005, Human Resource Director - Mary Whiteside, called Plaintiff downtown for a Reprimand Meeting after plaintiff was ~~fassey~~ fasely accused of calling a student, ~~then~~ when plaintiff gathered evidence to clear her name, Plaintiff was acussed of sending (texting) text from computer. Plaintiff requested a union rep, as a paid member

(Attach additional sheets as necessary).

Union Rep Liz Frazier, failed to represent plaintiff interest, abandoned the collective bargaining process, as (6) months later she became employed w ASD 259, as an employee supervised by Mary Whiteside, This became a serious Conflict of Interest. As Lizs now position was in direct conflict w/ My ability to transfer out of Brooks after Mr. Garner became the principal at brooks, despite Administration's awaress of previous incidents in 2001.

11. The acts set forth in paragraph 10 of this complaint:

_____ are still being committed by Defendant.

_____ are no longer being committed by Defendant.

✓ may still be being committed by Defendant.

12. Plaintiff:

✓ still works for Defendant

_____ no longer works for Defendant or was not hired

13. If this is a ***disability-related claim***, did Defendant deny a request for a reasonable accommodation?

✓ Yes _____ No

Explain: Following short-term disabilty in 2007, Principal Robert Garner, who followed me from Hamilton to Brooks, threw away my personal belongings while I was on short term disability, induced by his repetative retaliation. Plaintiff suffered Post Traumatic Stress Syndrom as a result.

**REQUEST FOR RELIEF**

As relief from the allegations of discrimination as stated above, Plaintiff prays that the court grant the following relief to Plaintiff: (check any and all that apply)

_____ Defendant be directed to employ Plaintiff

_____ Defendant be directed to re-employ Plaintiff

✓ Defendant be directed to promote Plaintiff

✓ Defendant be directed to grant and Award Plaintiff Monetary damages, compensatory

✓ Injunctive relief (please explain): See Complaint

✓ Monetary damages (please explain): See Complaint

✓ Costs and fees involved in litigating this case

✓ As additional relief to make Plaintiff whole, Plaintiff seeks: 600,000, including other reliefs as may be appropriate, including attorney fee.

and such other relief as may be appropriate, including attorney's fees, if applicable.

Signed this 22 day of October, 2009.

Juanita D. Blackmon
Signature of Plaintiff

Juanita D. Blackmon
Name (Print or Type)

1541 N. Floberta
Address

Wichita, Kansas 67208
City State Zip Code

Telephone Number 316 871-2507

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates ( Wichita, Kansas City or Topeka ), Kansas as the location for the trial in this matter. (circle one location)

Juanita D. Blackmon
Signature of Plaintiff

**REQUEST FOR TRIAL BY JURY**

Plaintiff requests trial by jury ( yes or no ).
(circle one)

Juanita D. Blackmon
Signature of Plaintiff

Dated: 10/22/09
(Rev. 8/07)

Juanita D. Blackmon
1541 N. Floberta
Wichita, Kansas 67208
316-871-2507
**Pro Se Plaintiff**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**JUANITA BLACKMON**

**Plaintiff**

vs. Case No. 09-cv-2546-EFM-KMH

**USD 259-WICHITA PUBLIC SCHOOLS DISTRICT AND ITS REPRESENTATIVES SUPERINTENDENT- JOHN ALLISON PRINCIPAL ROBERT GARNER, LIZ FRAZIER DR. KEN JANTZ**

**Defendant**

## COMPLAINT

COMES NOW plaintiff Juanita Blackmon, and for her cause of action against the defendant, States and alleges as follows:

## PARTIES, VENUE & JURISDICTION

1. Juanita Blackmon is an individual who has been employed by the Wichita Public School District-USD 259 in Wichita, Kansas, since August 1998, as an Interrelated

Para, transferred to Special Education 2002 til -present.

2. Defendant –Wichita Public School-USD 259 is a Kansas Public Business

3. Can be served by serving the Superintendent of USD 259 and its Representatives at 201 N. Water, Wichita, Kansas 67203.

4. Jurisdiction and venue are appropriate in the Court as the actions that give rise to this matter occurred in Sedgwick County, Kansas.

5. Plaintiff has exhausted all alleged administrative requirements.

COUNT 1 RACE/ SEX DISCRIMINATION/ (TITLE VII and STATE ACT)

6. For this count, pursuant to Title VII, 42 U.S.C. 2000e et seq., and K.S.A 44-1009, plaintiff incorporates by reference all preceding allegations, paragraph 1-5.

8. Plaintiff's race is African-American, and she is accordingly a member of a protected class.

9. As a current employee of 12 years of employment with defendant, plaintiff has been subjected to a pattern and practice of race discrimination, by defendant's agents and employees, including but not limited to: (1) disciplinary actions; (2) disparate treatment; (3) lost promotions;

(4) retaliation (5) general deterioration of the terms, conditions , and privileges of plaintiff employment.

10. As a direct and proximate result of defendant's unlawful acts, plaintiff has suffered damage, and is entitled to monetary and affirmative relief as may be appropriate, including but not limited to, declaration of rights, promotion, damages and her reasonable attorney's fees incurred herein, pursuant to the provisions of the law.

**WHEREFORE,** plaintiff prays for judgment against the defendant, on this Count in excess of $75,000.00 and that this Court find the defendant has engaged in unlawful employment practices, grant and award plaintiff a promotion, back pay and, a judgment for all of plaintiff's damages allowed by law, including punitive damages, prior and current reasonable attorney's fees, and such other relief as the Court deems just and equitable.

## COUNT II-RETALIATION (TITLE VII OF THE CIVIL RIGHTS ACT)

11. For this count, pursuant to 42 U.S.C. 2000, et seq., (protection from retaliation, according to state and federal law 29 C.F.R. Part 1604.11 for reporting discrimination claim to Human Rights Commission/EEOC), plaintiff incorporates by reference all preceding allegations, paragraphs 1-10

12. After plaintiff complained to defendant about the discrimination and

unlawful treatment, defendant retaliated against the plaintiff in the terms, conditions, and privileges of her employment including but not limited to: (1) Disciplinary actions; (2) disparate treatment; (3) lost promotions; (4) retaliation and, (5) general deterioration of the terms, conditions and privileges of plaintiff's employment.

**WHEREFORE,** plaintiff prays for judgment against the defendant in this count in excess of $75,000.00, that this Court find the defendant has willfully engaged in unlawful employment practices, and because of said unlawful practices, that the Court grant and award plaintiff back pay judgment for all of plaintiff's damages allowed by law, including compensatory and punitive damages for defendant's willful and wanton misconduct, plaintiff's prior and current reasonable attorney fees, and such other relief as the Court deems just and equitable.

## COUNT III PRIVACY ACT 1974 AS AMENDED/CONSPIRACY 18 U.S.C A UNITED STATES CODE 371 SECTION CONSPIRACY TO COMMIT OFFENSE

13. For this count, pursuant to 42 U. S. C. Privacy Act as Amended, Conspiracy to commit offense 18 U.S.C-371. As, governed by statute in federal courts.
14. Plaintiff has been subjected to willful and unlawful violations against her privacy children's privacy, as accordingly members of a protected class by defendants agents and employees, including but not limited to: (1) conspiracy to commit offense (2) disciplinary actions; (3) disparate treatment; (4) lost

promotions; (5) general deterioration of the terms, conditions and privileges of plaintiff's employment.

15. Plaintiff complained to defendants about finding her missing families photo in her personnel file, taped to the file with her first and last name and social security number.

16. Defendants engaged jointly in unlawful acts to conspire without thorough investigation or concern, while secretly profiling a hostility and harassment campaign with a series of retaliatory acts, against plaintiff's family & friends, to distort plaintiff 's liberty of interest in her reputation, good name, and quality of life.

17. As a direct and proximate result of defendant's unlawful acts, plaintiff and family has suffered damage, and is entitled to monetary and affirmative relief as may be appropriate, including but not limited to, declaration of rights promotion, damages, prior and current attorney fees incurred herein, pursuant to the provisions the law.

**WHEREFORE,** plaintiff prays for judgment against the defendant, on this count in excess of $75,000.00, and that this Court find the defendant has engaged in unlawful employment practice under the laws governing equal employment opportunities, and because of said unlawful practices, grant and award plaintiff a promotion, back pay, a judgment for all of plaintiff's damages allowed by law, including compensatory damages, punitive damages, plaintiff's cost and expenses of this action, including prior and current attorney fees, and such other relief as the Court deems just and equitable.

COUNT IV-HOSTILE ENVIRONMENT HARRASSMENT/PREGNANCY DISCRIMINATONACT/ AGE DISCRIMINATION-TITLE VII

18. For this count, pursuant to Title VII of Civil Rights Act of 1964 –ADA Disabilities Act of 1990 –prohibits private employers, state, and local governments employment agencies and labor unions from discrimination- plaintiff incorporates by reference all preceding allegations, paragraphs 1 through 17.

19. No employer shall discriminate against a qualified individual with a disability, Plaintiff has a record of such an impairment, in addition plaintiff has Care giving Responsibilities' to a disabled child.

20. Defendants unlawfully disregarded plaintiffs protections as a member of the protected class, a series of retaliatory acts ensued when plaintiff complained and opposed the patterns and practices of her employer.

21. After plaintiff went on FMLA leave, plaintiff suffered unlawful, pervasive treatment, defendant retaliated against the plaintiff in the terms, conditions and privileges of her employment including but not limited to: (1) disciplinary actions; (2) hostile work environments (3) disparate treatment (4) lost promotions; and, (5) general deterioration of the terms, conditions and privileges of plaintiff's employment.

**WHEREFORE,** plaintiff prays for judgment against the defendant on this count in excess of $75,000, that this Court find the defendant has engaged in unlawful employment practices, and because of said unlawful practices, grant and award plaintiff back pay and judgment for all of plaintiff's damages allowed by law, including compensatory and punitive damages for defendant's willful and wanton misconduct, plaintiff's cost and expenses of this action, including prior and current reasonable attorney's fees, and other relief as the Court deems just and equitable.

COUNT V-TITLE 18 U. S. C. SECTION 242 (DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

22. For this count pursuant to Title 18 U. S. C Section 242, the law prohibits a person acting under color of law, statutes, ordinance regulation , or custom to willfully subject or cause to be subjected any person to different punishment, pains, or penalties.

23. The actions of the defendants described above deprived plaintiff of her liberty interest in her reputation, good name, and ability to trust others.

24. As a direct and proximate result of defendant's unlawful acts, plaintiff has suffered damage, and is entitled to monetary and affirmative relief as may be appropriate, including but not limited to declaration of rights, promotions, damages, past wages and benefits, prior and current attorney's fees, and such other relief as the Court deems just and equitable.

25. Defendant was acting under the color of state law at the time of the aforementioned actions.

**WHEREFORE,** plaintiff respectfully prays for judgment against the defendant in this count for damages in excess of $ 75, 000.00, that this Court find the defendant has engaged in unlawful employment practices, grant and award plaintiff for damages allowed by law, including prior and current reasonable attorney's fees, and such other relief as the Court deems just and equitable.

## COUNT VI- NEGLIGENT RETENTION/SUPERVISION-EEOC FILING

26. For this count plaintiff incorporates by reference all preceding allegations and paragraphs 1 through 25.

27. Defendant has been on notice of the pattern and practice of race discrimination by defendants' agents and employees, including but not limited to: (1) KHRC/EEOC Rules, Regulations and filings (2) disciplinary actions (3) privacy violations/conspiracy to commit offense (4) lost promotions (5) general deterioration of the terms, conditions and privileges of plaintiff's employment.

28. Defendant owed plaintiff a common law duty to hire and retain fit personal, that would treat employees with respect and dignity.

29. Defendants breached said duty by retaining, said agents and employees in their employment when they knew, or should have known, of their propensities for race/sex/discriminatory /retaliatory acts against the plaintiff.

30. Defendant's breach is the cause in fact and proximate cause of plaintiff's Monetary and punitive damages.

31. Plaintiff has been damaged by defendants' harmful negligence.

**WHEREFORE**, plaintiff prays for judgment against the defendant in excess of 75, 000.00 for this count, and that the Court grant and award plaintiff judgment for all of plaintiff's damages allowed by law, including reasonable Attorney fees, and such other relief as the Court deems just

and equitable.

## COUNT VII-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

32. For this count plaintiff incorporates by reference the preceding allegations, paragraphs 1 through 31.

33. The defendant intentionally and/or recklessly inflicted emotional distress on the plaintiff, including but not limited to: (1) disciplinary actions; (2) disparate treatment; (3) unlawful retaliation (4) lost promotions; and (5) conduct affecting the terms, conditions and privileges of her employment.

34. Defendant's treatment of plaintiff is and was extreme and outrageous, causing plaintiff severe emotional distress and to seek the continued treatment of health care professionals.

35. The defendant's conduct goes beyond all possible bounds of decency, and is atrocious and utterly intolerable in this society.

**WHEREFORE**, plaintiff prays for judgment against the defendant in excess of $75,000.00, for this count, and that the Court grant and award plaintiff her costs as provided by law, including compensatory and punitive damages for the defendant's willful and wanton misconduct and treatment of plaintiff, and such other relief as the Court deems just and equitable.

COUNT VIII-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

36. For this count plaintiff incorporates by reference the preceding allegations, paragraphs 1 through 35.

33. The defendant owed plaintiff, as an employee of defendant's, a duty to refrain from conduct that would cause plaintiff emotional distress resulting from defendant's work-related behavior.

34. Despite KHRC/EEO FILINGS, defendants breached that duty by engaging in conduct that inflicted severe emotional distress on plaintiff.

35. The defendant's treatment of plaintiff was the actual and proximate cause of plaintiff's injuries for which plaintiff sought the continued treatment of health care professionals.

36. Defendant's conduct goes beyond all possible bounds of decency, and is atrocious and utterly intolerable in this society, and as such rises to the level of willful, wanton , and reckless misconduct allowing plaintiff to make a claim for punitive damages.

**WHEREFORE,** plaintiff prays for judgment against the defendant in excess of $75,000.00 for this count, and that this Court find the defendant has engaged in unlawful employment practices, and because of said unlawful practices, grant and award plaintiff all of the damages by law, including compensatory and punitive damages, plaintiff's costs and expenses of this action, including reasonable attorney's fees, and such other relief as the Court deems just and equitable.

**EEOC—90 Day Right to Sue letter, deadline-October 26, 2009**

Respectfully Submitted,

Juanita D. Blackmon
**Pro Se Plaintiff**
1541 N. Floberta
(316)871-2507

**REQUEST FOR A JURY TRIAL**

_ Plaintiff hereby requests that this case be tried to a jury.

Juanita D. Blackmon

Juanita D. Blackmon
1541 N. Floberta
Wichita, Kansas 67208
(316) 871-2507
**Pro Se Plaintiff**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

JUANITA D. BLACKMON }
}
Plaintiff }
}
vs. } Case No.____________

}
WICHITA PUBLIC SCHOOLS- }
DISTRICT -USD 259- }
SUPERINTENDENT- }
JOHN ALLISON, ROBERT GARNER, }
KEN JANTZ & }
LIZ FRAZIER & ITS REPRESENTATIVE }
}

Defendant }

________________________________}

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Juanita D. Blackmon, designated Kansas City, Kansas, as the place of trial in this action.

Respectfully Submitted,

Juanita D. Blackmon
1541 N. Floberta
316 871-2507
Pro Se Plaintiff

EEOC Form 161 (2/08)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Juanita D. Blackmon**
**1541 N. Floberta**
**Wichita, KS 67208**

From: **St. Louis District Office**
**Robert A. Young Bldg**
**1222 Spruce St, Rm 8.100**
**Saint Louis, MO 63103**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **28D-2009-00274** | **Joseph J. Wilson, Investigator** | **(314) 539-7816** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Joseph J. Wilson

**James R. Neely, Jr., Director**

July 27, 2009
*(Date Mailed)*

Enclosures(s)

cc: **Sara J. Loquist**
**Assistant General Counsel**
**WICHITA PUBLIC SCHOOLS USD 259**
**201 N. Water St.**
**Wichita, KS 67202**

**Rebekah Phelps-Davis**
**1414 S.W. Topeka Blvd.**
**P.O. Box 1886**
**Topeka, KS 66601**

**PHELPS-CHARTERED**

**Attorneys At Law**

Phelps Building
1414 SW Topeka Blvd.
P.O. Box 1886
Topeka, KS 66601-1886

Telephone (785) 233-4162
Fax (785) 233-0766
www.phelpschartered.com

August 11, 2009

Juanita D. Blackmon
1541 N. Floberta
Wichita, Kansas 67208

Subject: *Blackmon v. Wichita Public School, USD 259 and its representatives;* Docket No. 32399-09W

Dear Ms. Blackmon:

I am in receipt of the decision from the Equal Employment Opportunity Commission, wherein it is set out that EEOC has adopted the findings of the Kansas Human Rights Commission, which, as you know, was a No Probable Cause finding, and has issued you your Right to Sue letter.

As you can see from what has been set out in the Right to Sue Letter, you have 90 days from the date you receive the Right to Sue Letter to file a lawsuit if you intend to do so. **Please note: the Right to Sue Letter is dated July 27, 2009. Therefore, October 26, 2009 is your deadline to file a lawsuit if you intend to do so. This firm will not represent you in the filing of a lawsuit regarding this matter.**

If you have any questions, please advise.

Thanks.

Sincerely,

Rebekah A. Phelps-Davis

bd
cc

PHELPS-CHARTERED
Attorneys At Law

Phelps Building
1414 SW Topeka Blvd.
P.O. Box 1886
Topeka, KS 66601-1886

Telephone (785) 233-4162
Fax (785) 233-0766
www.phelpschartered.com

January 21, 2009

Mary Whiteside
Human Resources
Wichita Public Schools
U.S.D. 259
201 N. Water
Wichita, Kansas 67202

Via Fax #316.973.4417
and U.S. Mail

Subject: *Response to Principal Robert Garner's Proposal to Implement Written Reprimand Against Employee Juanita Blackmon*

Dear Ms. Whiteside:

This office represents Juanita Blackmon regarding her potential claims against Wichita Public Schools USD 259, and its representatives. Within the parameters of this representation, this office has prepared and had filed a Complaint with the Kansas Human Rights Commission due to discriminatory actions taken against Ms. Blackmon based upon her race, sex, disability, and in retaliation against Ms. Blackmon for complaining about such discrimination. This complaint was docketed on December 19, 2008, and is Docket No. 32399-09W.

In follow up to this complaint being filed, and on or about January 5, 2009, Ms. Blackmon was given a letter from Robert Garner, Principal at Brooks Technology and Arts Magnet, and Ms. Blackmon's supervisor, informing her of the following: "I've been instructed by human resources to pay you the hour you worked on December 19th. I will have my secretary adjust your time and you will be compensated. However, because you didn't seek prior approval to work beyond the school day, I must inform you that there will be a disciplinary conference held tomorrow at 12:30 p.m. in my office." Ms. Blackmon immediately informed me of this and I in turn informed Mr. Garner that I represent Ms. Blackmon, and would need to be at this meeting. He in turn contacted Sarah Loquist, Assistant General Counsel for Wichita Public Schools and she in turn called me. The meeting was rescheduled to January 8, 2009, at 1:00 p.m. so that I would be able to be at this meeting. It was my understanding from my conversations with Mr. Garner and Ms. Loquist that this meeting would be an opportunity for a discussion to be held regarding what took place on December 19, 2008. That once Ms. Blackmon had an opportunity to respond, that a decision would then be made as to whether or not disciplinary action would be implemented by Mr. Garner.

Upon arriving at this meeting, it immediately became clear that Mr. Garner, presumably with the advice of Ms. Loquist had already made up his mind, without any input from Ms. Blackmon that he was going to implement disciplinary action against Ms. Blackmon, and what that disciplinary action would be. Thus, it was clear that the meeting was a total waste of time for all of the individuals in attendance. Had Mr. Garner and/or Ms. Loquist informed me that the decision had already been made and that Ms. Blackmon could have an opportunity to respond in writing to the decision that has been made, this meeting would not have been necessary, and Ms. Blackmon would have been more than happy to simply respond to the plan to impose disciplinary action against her in writing, to you, as she is now doing, through her attorney, by this letter. Mr. Garner and Ms. Loquist clearly knew what they planned to do at this meeting on January 8, 2009, and they also knew that Ms. Blackmon's attorney had to come from Topeka to attend this meeting. So, the professional and courteous approach would have been to inform Ms. Blackmon and/or her attorney that the decision had already been made and that she would have two (2) weeks to respond to this decision, to Human Resources, and we could have taken it from there.

Furthermore, the demeanor of Mr. Garner, Mr. Nicholson (the Assistant Principal, who also attended this meeting) and Ms. Loquist were all very accusatory and abrupt and their approach toward Ms. Blackmon was rushed and retaliatory. There was clearly no plan to give Ms. Blackmon any opportunity to explain what happened on December 19, 2008, prior to implementing the disciplinary action. Mr. Garner's mind was made up without having any discussion with Ms. Blackmon, or giving her any proper notice and opportunity to respond. When I pressed those in the room, I was informed that Mr. Garner was going to read what he had written up and that then Ms. Blackmon could respond. Just prior to Mr. Garner bulling forward with his "Recommendation", Ms. Loquist then abruptly stopped Mr. Garner, telling him that now Ms. Blackmon could respond, but that she needed to inform Ms. Blackmon that she could respond in writing within two (2) weeks to Human Resources. Ms. Blackmon, after assessing the fact that she was in a very hostile environment and realizing that she was not going to be given an opportunity to discuss what happened on December 19, 2008, prior to Mr. Garner making his decision to implement disciplinary action against her, consulted with her counsel, and decided that she would submit a written response to the proposal to implement a written reprimand against her as a result of what happened on December 19, 2008.

Here's what happened on December 19, 2008: Ms. Blackmon, due to the fact that her daycare provider was no longer providing daycare services for her little child because she was beginning an internship in Washington, D.C., had to find alternate daycare for her little child for December 19, 2008. Her only option on such short notice was not able to arrive to watch Ms. Blackmon's little child in time for Ms. Blackmon to be able to arrive to work at her normal arrival time. As a result, Ms. Blackmon was approximately an hour late for work. Upon arriving at the front office to clock in, Mr. Garner's secretary, Julie Mitchell, approached Ms. Blackmon and asked her if she would like to just stay an hour later to make up this hour. Ms.

Blackmon told her that she would like to if she could. Ms. Mitchell told her that she could do that. So, Ms. Blackmon went forward to get her work done that day, and utilized the time that she worked appropriately and effectively. Mr. Garner was nowhere in the vicinity at the time that this conversation took place between Ms. Blackmon and Ms. Mitchell. When Ms. Blackmon did finally see Mr. Garner that day, she found him in the hallway where the ramp is located rolling chairs down the ramp and sitting in the chairs and rolling down the ramp in the chairs. These are chairs that were paid for with the tax dollars of the citizens and that should be utilized appropriately and not in such a fashion that you would expect to see from a child that would presumably then be admonished by the adult for partaking in such behavior. Clearly, Mr. Garner was not there to work on December 19, 2008.

Furthermore, it appears, based upon the response from Mr. Garner to this situation, that Ms. Mitchell offered this option to Ms. Blackmon to set her up to then get in trouble with Mr. Garner. These actions on the part of Ms. Mitchell, Mr. Garner, and Mr. Nicholson, are unlawful and are clearly retaliatory in nature and are being implemented against Ms. Blackmon because she has filed a complaint against Wichita Public Schools, U.S.D. 259, and its representatives. Mr. Garner, along with his sidekick, Mr. Nicholson, have one goal with regard to Ms. Blackmon – do whatever it takes to get rid of her. Ms. Blackmon has previously informed her counsel about the fact that Mr. Nicholson follows her everywhere that she goes when she is at work. Furthermore, he constantly is recording what he allegedly observes Ms. Blackmon doing and presumably is reporting what he perceives Ms. Blackmon is doing to Mr. Garner. When I arrived at Brooks Technology and Arts Magnet School, I was consulting with my client prior to the meeting. During this time, I personally observed Mr. Nicholson's behavior. Furthermore, when the meeting took place, Mr. Nicholson was sitting there with his paraphernalia on that he utilizes to record.

All of this behavior on the part of Mr. Garner and Mr. Nicholson and Ms. Mitchell are not appropriate and unlawful and are clearly being implemented for retaliatory reasons against Ms. Blackmon, to try to wear her down and/or to try to catch her in something that they perceive is a basis upon which to implement disciplinary action against her. Clearly, if what happened on December 19, 2008 was against the school district's policy, Mr. Garner would not have been "instructed by human resources to pay you for the hour you worked on December 19th" as he articulated in his letter dated January 5, 2009. Yet, Mr. Garner is of the opinion that it is appropriate to take disciplinary action against Ms. Blackmon.

I would ask Mr. Garner what disciplinary action should be implemented against him for his abuse of school property and abuse of work time that took place when he decided to participate in the rolling of chairs down the ramp and sitting in the chairs and rolling down the ramp during the time period when he is supposed to be working and is being paid with the tax dollars of the citizens to work. Furthermore, what disciplinary action should be implemented against the employees that work under his authority that took part in this activity along with him?

Mr. Garner sets out in the document that he read from on January 8, 2009, (a copy of which is enclosed with this letter) that Ms. Blackmon was provided a hand written copy of the work expectations, guidelines and policies at a meeting that took place on October 8, 2008 during a PLC session that all para-educators were required to attend. Mr. Garner did not provide a copy of this document to Ms. Blackmon or her attorney during this meeting, nor did he attach a copy of this document to the document that he read from on January 8,2009. Mr. Garner wrote that he told Ms. Blackmon in a letter dated January 18, 2007, that she needed his approval regarding "Special circumstances that prevent you from being at work on time or require you to leave early.. . ." Again, a copy of the January 18, 2007 letter was not provided to Ms. Blackmon or her attorney during this meeting, and a copy of the letter was not attached to the document that he read from on January 8, 2009. First, there was nothing in the documentation from the meeting of October 8, 2008 that set forth that Ms. Blackmon needed Mr. Garner's approval to be able to make up time if she had to come in late. Second, the letter of January 18, 2007 was sent to Ms. Blackmon because she was on probation at the time. So, special rules were put in place. Further, the January 18, 2007 letter did not state that she needed Mr. Garner's approval to be able to make up time if she had to come in late. Mr. Garner also sets out in his document that he worked with Ms. Blackmon to adjust her work schedule in March, 2007 so that she could transport her son to school. Even if this is true, it is completely irrelevant to the matter at hand. Finally, Mr. Garner sets out in his document that he "did not become aware of this until time cards were reviewed, . . ..", speaking about the fact that Ms. Blackmon had come in late on December 19, 2008, and stayed late to make up the time. I'm sure he did not become aware of what happened on December 19, 2008, because he was too busy playing on taxpayer's time to pay attention to his duties as Principal of Brooks Technology and Arts Magnet School. One of the main problems that Ms. Blackmon has in trying to work with Mr. Garner is that he will implement whatever procedure that he feels like implementing at the time, to carry out his agenda. There is no consistency in his policies and procedures. For instance, when we were sitting in the meeting on January 8, 2009, Mr. Garner began to pontificate that he wants to make it abundantly clear what Ms. Blackmon's responsibility is if she is going to be late or if she needs to stay late so that there would be no question in her mind, and to "alleviate miscommunication". Mr. Garner was asked to put that in writing. Mr. Garner then proceeded to put down in writing what he had presumably just articulated to Ms. Blackmon and in doing so, left out one major part. After reading what he had written, Ms. Blackmon's counsel pointed out to him that he had not put down in writing what he had just said. So, he then modified the document. Attached to this letter is the "1st Copy" marked as Appendix "A" and the "2nd Copy" marked as Appendix "B" The clause "or if there is a request to work beyond the normal work-day." That Mr. Garner added to 2nd Copy is the first time that Mr. Garner has made it clear and/or put in writing that Ms. Blackmon is obligated to "call me personally and if I'm not available, the expectation is that you leave a message on my voice mail." if Ms. Blackmon wants to "request to work beyond the normal work-day." Therefore, Ms. Blackmon was never given any notice from Mr. Garner that she needed to request permission from him personally and only him if she wants to "request to work beyond the normal work-day." prior to Mr. Garner implementing the disciplinary action against Ms. Blackmon of a written reprimand that he is proposing in his

document dated January 8, 2009. These appendices are being provided to show an example of what Ms. Blackmon has to deal with every day in working with Mr. Garner. There is no good, clear communication; there is no consistency from Mr. Garner. His approach is whatever he has to do at the time to make it fit within his agenda is what he will do.

The bottom line is that Ms. Blackmon did what was necessary given the circumstances to make sure that she gave her employer a full day's work. She was given an offer and an opportunity from Mr. Garner's secretary to be able to make up the hour that she had lost due to having to have a last minute change in her daycare. She diligently utilized the time that she was given and got some productive work done and utilized her work hours actually working, rather than playing on taxpayer's time. The only reason that this has become an issue with Mr. Garner is because he is angry that Ms. Blackmon has filed a complaint with the Kansas Human Rights Commission, which he got notice of **after** December 19, 2008, and before Ms. Blackmon returned to school from Winter break. Thus, he set about to take further retaliatory action against Ms. Blackmon. His first attempt got shut down by Human Resources. So, he moved on to implement disciplinary action against Ms. Blackmon without giving her any notice and opportunity to be heard prior to making his decision. There is no doubt that Mr. Garner and Ms. Mitchell are working together in this matter to try to make a case against Ms. Blackmon. It is so wrong for Mr. Garner to use his secretary to try to trap Ms. Blackmon in this situation. But, then again, that is what Ms. Blackmon is used to from Mr. Garner and those employees that he has been utilizing that work at Brooks Technology and Arts Magnet School to try to get rid of Ms. Blackmon. Albeit, she did not expect that it would come from Ms. Mitchell. Now, she knows better. Mr. Garner gave no prior notice to Ms. Blackmon of what he required of her; Ms. Blackmon was not given any notice and opportunity to be haerd prior to Mr. Garner making his decision; and, Mr. Garner has no proper basis to take disciplinary action against Ms. Blackmon. Therefore, the written reprimand should not stand.

We look forward to hearing from you and working with you to resolve this matter.

Sincerely,

Rebekah A. Phelps-Davis

bd
Enclosures and Attachments (as indicated)
cc: Juanita Blackmon



**NANCY LANDON KASSEBAUM**
**UNITED STATES SENATE**

Dear Mrs. Blackmon -

This is a long overdue note to express congratulations on being the 542nd "Daily Point of Light." I read your paper on "Positive Youth Making a Difference" and was very

impressed. I certainly agree that "all parents have basic and important responsibilities where their children are concerned".

Many times this is a very difficult task - as you know. As the New Year starts with all of its challenges I wanted to send my warmest wishes for the very best in 1992 - and my appreciation of your thoughtful caring - Warmest regards, Nancy